# CIRCUIT COURT OF HENRICO COUNTY

Linwood Kammeter

v.

Susan Kammeter

September 21, 1978

Case No. 75C268/B-76

By Judge E. Ballard Baker

The issue is the custody of Lori Suzanne, now five years old.

By Final Decree of January 22, 1976, custody was given to Susan Kammeter. This was without a hearing in accord with the bed and board decree. In the Spring of 1978, Linwood Kammeter, the father, filed a Petition for Change of Custody. The matter was heard, ore tenus, on September 11, 1978.

It is impossible to recite all the evidence presented at the hearing. However, by way of summary the following is submitted as presenting a basic outline.

Susan Kammeter is now completing a course of training under which she will graduate as a licensed practical nurse on September 29, 1978. She presently shares an apartment with another girl. Since August 1977, Lori has been living with Susan's mother in Dillwyn, Virginia. Susan's plan is to obtain employment in the Richmond area after her graduation, obtain a larger apartment and bring Lori to live with her.

Linwood Kammeter has remarried, and he and his present wife have a home in Glen Allen. They both work.

Both parents would enroll Lori in a kindergarten in the Henrico School System, and with each this would involve some arrangements not too difficult to work out.

Each concedes that the other loves Lori, but each, not unnaturally, feels he or she can take better care of Lori. Mr. Kammeter contends

that Susan and he have had visitation differences, that Lori has been constantly moved around, that Susan has let the child stay in Dillwyn, Virginia, since August 1977 with varying arrangements for care, that Susan has had psychiatric problems in the past, that Susan is still under Dr. McEntire, a psychiatrist, that she has changed jobs frequently in the past, and that she is unable to properly cope with raising the child. Mrs. Kammeter contends that Linwood, by not fully exercising visitation, evidences some lack of concern, that he has been married four times, that Linwood agreed with the plan for Lori to remain in Dillwyn while she completed her nursing course, and that there was no great problem relating to custody prior to his remarriage in August 1976.

Dr. Hertha Riese, a psychologist, testified for Linwood, after several observations of Lori. She felt Lori was a "rootless" child, and had the need for a family and home. She also testified, without ever having seen Susan, that a person with a diagnosis of "depressive neurosis" would not be good for Lori to live with.

Dr. Wesley McEntire, a psychiatrist, testified for Susan. He said Susan had three voluntary admissions to Westbrook, the latest ending in April 1977, that she was presently doing well and he was seeing her on a regular basis at the present time. He thought she could handle the stress of her work as an L.P.N. and, while he had not examined Lori, he felt Susan could be a good mother to Lori. Susan's diagnosis at the hospitalizations had been "depressive neurosis."

Each parent presented other witnesses in support.

There is no dispute on the law. From *McCreery* v. *McCreery*, 218 Va. 352 (1977), and cases cited therein, "the primary and controlling consideration is the child's welfare." *McCreery* did set at rest confusion about the "tender years presumption," pointing out that this is merely an inference which "controls only when the evidence shows that the mother is fit and 'other things' affecting the child's welfare are equal." (218 Va. 355).

The evidence does not permit a finding at this time that the mother is fit and other things are equal. This conclusion is based upon the facts that Susan will shortly enter into a new employment situation, the exact nature which was unknown at the hearing and will, if Lori is with her, at the same time be seeking to locate to another apartment and making the necessary arrangements for Lori. While it may be that Susan can cope with the pressures which these events will bring, as Lori has an adequate and satisfactory home with Linwood available to

her it appears clear to me that Lori's interests in the immediate future are best served by her being with Linwood. Whatever stresses Susan may have during the transition, there is no reason why Lori should have to be subjected to them on a daily basis.

For that reason, in my view, custody of Lori should be placed with her father at this time. After Susan has settled into her work and her new living arrangements, if the parents themselves cannot determine what is best for Lori then the case can be reviewed in the light of the then existing conditions.

Susan, of course, is entitled to visitation. Hopefully, the parents can work that out, but if not I will do so if counsel advise as to the respective positions on visitation. As Lori will be spending nights with Susan during visitation, I think she is entitled to a room of her own. I see no reason why Linwood should not aid in payment of the room. Consequently, the order should provide that Linwood will pay 50% of the difference between a two-bedroom and a one-bedroom apartment where Susan locates.